IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELDER ISMAEL CENTENO IBARRA,<br><br>**Petitioner,**<br><br>v.<br><br>WARDEN OF THE FEDERAL DETENTION CENTER PHILADELPHIA, *et al.*,<br><br>**Respondents.** | CIVIL ACTION NO. 25-6312 |

### MEMORANDUM OPINION

Rufe, J.                                                                                                November 25, 2025

Petitioner Elder Ismael Centeno Ibarra petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS). He argues his mandatory detention by DHS pursuant to 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act (INA), is the result of an unlawful interpretation of that statute. He also contends that his mandatory detention without bond under § 1225 violates due process. Because § 1225(b)(2) does not apply to noncitizens like Centeno Ibarra who have resided in the United States for an extensive duration, his petition will be granted.[1]

**I.   BACKGROUND**

Mr. Centeno Ibarra is a citizen of Nicaragua who came to the United States seeking asylum.[2] He claims he and his family were fleeing political persecution in Nicaragua.[3] On approximately September 28, 2022, Mr. Centeno Ibarra arrived at the southern border, where he

---

[1] At the urging of the Parties, the Court has decided the Petition on the papers, without holding a hearing. Nov. 21 Letter [Doc. No. 16].

[2] Pet. Writ Habeas Corpus ¶¶ 1, 23 [Doc. No. 1].

[3] Pet. Writ Habeas Corpus ¶ 23 [Doc. No. 1].

encountered immigration authorities who briefly detained him before he was released on a grant of humanitarian parole pursuant to section 212(d)(5) of the INA on November 29, 2022.[4] He then traveled to Philadelphia.[5] On or about April 21, 2023, Mr. Centeno Ibarra affirmatively applied for asylum with the United States Citizenship and Immigration Service ("USCIS").[6]

On November 3, 2025, Mr. Centeno Ibarra was detained by Immigration and Customs Enforcement ("ICE") while attending a required check-in.[7] He was first detained at the Federal Detention Center in Philadelphia.[8] Mr. Centeno Ibarra filed this habeas petition on November 6, 2025, while he was at the Federal Detention Center in Philadelphia.[9] He is now detained at Moshannon Valley Processing Center.[10] Mr. Centeno Ibarra has no criminal record in the United States or anywhere in the world.[11] He is detained pending removal proceedings.[12] After the filing of the petition, the parties stipulated to, and the Court approved, an agreement that the government would continue to detain Mr. Centeno Ibarra at detention facilities located within the Commonwealth of Pennsylvania.[13]

---

[4] Parole Doc. [Doc. No. 1-3]; Pet. Writ Habeas Corpus ¶ 1 [Doc. No. 1].

[5] Pet. Writ Habeas Corpus ¶ 1 [Doc. No. 1].

[6] Form I-797C [Doc. No. 1-4].

[7] Pet. Writ Habeas Corpus ¶ 25 [Doc. No. 1].

[8] Pet. Writ Habeas Corpus [Doc. No. 1].

[9] Pet. Writ Habeas Corpus ¶ 1 [Doc. No. 1].

[10] Reply Supp. Pet. Writ Habeas Corpus at 2 [Doc. No. 14].

[11] Pet. Writ Habeas Corpus ¶ 3 [Doc. No. 1].

[12] As of the filing of his Petition for a Writ of Habeas Corpus, the government had not yet formally initiated removal proceedings. Pet. Writ Habeas Corpus ¶¶ 4, 27 [Doc. No. 1]. Mr. Centeno Ibarra now is scheduled for his first Master Calendar Hearing before an immigration judge on November 24, 2025. Reply Supp. Pet. Writ Habeas Corpus at 2 [Doc. No. 14]. This scheduling hearing is not a bond hearing, nor is it a hearing on Mr. Centeno Ibarra's asylum claim.

[13] Order Approving Stip. [Doc. No. 7].

Mr. Centeno Ibarra was detained by ICE pursuant to a new DHS policy. "On July 8, 2025, [DHS] . . . instituted a notice titled 'Interim Guidance Regarding Detention Authority for Applicants for Admission' to all ICE Employees."[14] "Under this new interpretation and policy, individuals 'present in the United States without admission or parole' are now treated as 'applicants for admission' subject to mandatory detention under § 1225(b)(2), rather than discretionary detention under § 1226(a).[15] "[N]early all noncitizens who have never been admitted, regardless of whether they were stopped at the border or arrested years later inside the country, are now classified as an 'applicant for admission' that is 'seeking admission' into the country under § 1225(b)."[16] On September 5, 2025, the Board of Immigration Appeals (BIA) in *Matter of Yajure Hurtado* agreed with DHS's interpretation and found that the INA requires that all applicants for admission who have entered without admission or inspection, including those who have been residing in the United States for years without lawful status, are subject to mandatory detention without bond under § 1225(b).[17]

## II. LEGAL STANDARD

Federal district courts can grant a § 2241 habeas petition when a petitioner's detention in deportation proceedings is "in violation of the Constitution or laws or treaties of the United States."[18] The burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law.[19]

---

[14] *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025).

[15] *Soto v. Soto*, No. 25-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025).

[16] *Id*.

[17] 29 I&N Dec. 216 (BIA 2025).

[18] 28 U.S.C. § 2241; *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

[19] 28 U.S.C. § 2241(c)(3); *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

### III. DISCUSSION

Mr. Centeno Ibarra argues that his mandatory detention under § 1225(b)(2) of the INA is unlawful and that his detention violates due process. The government asserts that § 1225(b)(2) should be interpreted to allow for Mr. Centeno Ibarra's mandatory detention, this Court lacks jurisdiction, and Mr. Centeno failed to exhaust his claims.

#### A.   Jurisdiction

The government challenges this Court's jurisdiction by referencing three different statutory provisions: 8 U.S.C. § 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). In considering each provision, the Court is guided by "the usual 'strong presumption in favor of judicial review of administrative action'" and "the general rule [that] the narrower construction of a jurisdiction-stripping provision is favored."[20]

First, 8 U.S.C. § 1252(g), which concerns removal proceedings, states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[21] Yet, this restriction "reaches only these three specific actions, not everything that arises out of them."[22] Mr. Centeno Ibarra's petition is not covered by § 1252(g). Indeed, his petition challenges the legality of his detention,

---

[20] *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)); *Id.* (quoting *Alli v. Decker*, 650 F.3d 1007, 1013 n.9 (3d Cir. 2011)).

[21] 8 U.S.C. § 1252(g).

[22] *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *see, e.g.*, *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Cantu-Cortes v. O'Neill*, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); *Demirel v. Fed. Det. Ctr. Phila., et al.*, No. 25-5488, 2025 U.S. Dist. LEXIS 226877 (E.D. Pa. Nov. 18, 2025); *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025).

with the goal of seeking release.[23] Because Mr. Centeno Ibarra challenges his detention and not the government's commencement of removal proceedings, § 1252(g) does not apply.

Second, the government invokes § 1252(b)(9), which provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."[24] However, the Third Circuit recognizes an important exception. Namely, the statute "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal."[25] Because it would be implausible for Mr. Centeno Ibarra to challenge his detention following a final order of removal deporting him or order releasing him with legal status, judicial review must be permitted at this earlier stage. Accordingly, § 1252(b)(9) does not strip jurisdiction.[26]

Third, the government cites 8 U.S.C. 1252(a)(2)(B)(ii), which states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."[27] The Court is not persuaded that this statute bars its jurisdiction, however, because the coordinate provision in § 1252(a)(2)(B)

---

[23] Pet. Writ Habeas Corpus [Doc. No. 1].

[24] 8 U.S.C. § 1252(b)(9).

[25] *E.O.H.C.*, 950 F.3d at 186. The government's citation to other circuits is unavailing. This Court is bound by Third Circuit precedent.

[26] *See, e.g.*, *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); *Demirel v. Fed. Det. Ctr. Phila., et al.*, No. 25-5488, 2025 U.S. Dist. LEXIS 226877 (E.D. Pa. Nov. 18, 2025); *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025).

[27] 8 U.S.C. § 1252(a)(2)(B)(ii).

expressly exempts habeas corpus proceedings and, in any event, the "extent of the [government's] authority under the . . . detention statute[s] . . . is not a matter of discretion."[28] Therefore, § 1252(a)(2)(B)(ii) does not make the present petition unreviewable.

### B. Exhaustion

The government argues the Court should not hear Mr. Centeno Ibarra's claims because he failed to exhaust them in administrative procedures. Generally, a § 2241 habeas petitioner must exhaust his claims.[29] A petitioner does not need to "exhaust administrative remedies where the issue presented involves only statutory construction."[30] There are no applicable statutory exhaustion requirements and the issue in this case hinges entirely on the statutory construction of 8 U.S.C. §§ 1225 and 1226, so Mr. Centeno Ibarra is not required to exhaust.

Further, a futility exception exempts Mr. Centeno Ibarra from the exhaustion requirement. "[W]here exhaustion is not clearly mandated by statute, a futility exception exists."[31] When the relevant administrative process will almost certainly reject petitioner's requested relief, exhaustion is not required.[32] The BIA has already issued a decision in *Hurtado*, so any administrative challenge "would almost certainly result in the BIA persisting in its earlier rulings and applying those rulings to [Mr. Centeno Ibarra] . . . ."[33] Mr. Centeno Ibarra is therefore not required to exhaust his claims.[34] Indeed, the government recognizes that the BIA

---

[28] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

[29] *Callwood v. Enos*, 230 F.3d 627, 643 (3d Cir. 2000). When not required by statute, exhaustion "is a matter of sound judicial discretion." *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980).

[30] *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012).

[31] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003).

[32] *See, e.g.*, *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

[33] *See, e.g.*, *Del Cid v. Bondi*, No. 25-0304, 2025 WL 2985150, at *13 (W.D. Pa. Oct. 23, 2025).

[34] *See, e.g.*, *Ndiade v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Cantu-Cortes v. O'Neill*, 2025 WL 3171639 (E.D. Pa.

*Hurtado* decision would control any administrative challenge.[35] Requiring Mr. Centeno Ibarra to exhaust in the administrative process through his immigration judge and the BIA prior to litigating his habeas claims before this Court would be futile.

### C. Merits of the Habeas Petition

The merits of Mr. Centeno Ibarra's claim depend on whether § 1225(b)(2) may apply to noncitizens like him, that is, those who already entered the United States without authorization and who have been living in the country for years. Until recently, such noncitizens were detained pursuant to § 1226(a). This Court finds that § 1226(a), rather than § 1225(b), applies to Mr. Centeno Ibarra, and he is entitled to relief.

Section 1225(b)(2) states:

> [I]n the case of *an alien who is an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, *the alien shall be detained* for a proceeding under section 1229a of this title.[36]

The statute defines "an applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."[37] The statute also defines "admitted" and "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."[38] The statute does not define "an alien seeking admission."

---

Nov. 13, 2025); *Demirel v. Fed. Det. Ctr. Phila., et al.*, No. 25-5488, 2025 U.S. Dist. LEXIS 226877 (E.D. Pa. Nov. 18, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025).

[35] Gov't Resp. at 11 [Doc. No. 12].

[36] 8 U.S.C. § 1225(b)(2) (emphasis added).

[37] 8 U.S.C § 1225(a)(1).

[38] 8 U.S.C. § 1101(a)(13)(A).

Under 8 U.S.C. § 1226(a), a noncitizen may be detained and released on bond. Bond is available if the noncitizen "demonstrate[s] . . . such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding."[39] "[T]he immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond."[40] Section 1225(b)(2) requires mandatory detention, and § 1226(a) permits detention only with the opportunity for a bond hearing.

In considering the statutes, Court need not defer to the BIA's decision in *Matter of Yajure Hurtado* that mandatory detention under § 1225(b)(2) applies to all applicants for admission.[41] Indeed, the overwhelming majority of district courts around the country that have considered this issue have rejected *Hurtado.* These courts have found that the mandatory detention under § 1225 of noncitizens residing within the United States, who are not seeking arrival or are recent arrivals, is unlawful.[42] As of November 21, 2025, at least five courts within the Eastern District of Pennsylvania have ruled against the government's current interpretation of § 1225(b)(2).[43] I agree with my colleagues in these cases, who have rejected the government's current interpretation. While these district court decisions are not binding on this Court, they are persuasive.

---

[39] 8 C.F.R. § 236.1(c)(8).

[40] 8 C.F.R. § 236.1(d)(1).

[41] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024).

[42] As of November 18, 2025, at least 288 district court decisions had addressed this same issue, and 282 of these decisions have rejected the Government's interpretation of the INA. *Demirel v. Fed. Det. Ctr.*, No. 25-cv-5488, slip op. at 1 (E.D. Pa. Nov. 18, 2025) (Diamond, J.) (Dkt. No. 11); *see also* Appendix, *Demirel*, No. 25-cv-5488 (Dkt. No. 11-1) (listing out all 288 cases). Only six of these decisions have adopted the Government's interpretation, and none of them are in this District. *Demirel*, slip op. at 1. This Court does not view these contrary decisions as persuasive.

[43] *See Cantu-Cortes v. O'Neil*, No. 25-cv-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); *Kashranov v. Jamison*, No. 2:25-cv-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.); *Demirel v. Fed. Det. Ctr.*, No. 25-cv-5488 (E.D. Pa. Nov. 18, 2025) (Diamond, J.) (Dkt. No. 11); *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025) (Brody, J.); *Ndiaye v. Jamison*, No. 25-cv-6007 (E.D. Pa. Nov. 19, 2025) (Sanchez, J.).

In interpreting § 1225(b)(2) and 1226(a), this Court must "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'"[44] The Court first "start[s] . . . with the statutory language."[45] A court must determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."[46] Statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[47]

The language of § 1225(b)(2)(A) supports limiting this section to noncitizens who are just arriving or have recently arrived in the country. The subsection requires mandatory detention in the context of an "applicant for admission" who is "seeking admission."[48] The phrase "seeking admission" connotes present, on-going action. Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States.

The title and headings of 8 U.S.C. § 1225 confirm this interpretation. Courts have "long considered that 'the title of a statute and the heading of a section are tools available for the resolution of a doubt' about the meaning of a statute.'"[49] The title of 8 U.S.C. § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral

---

[44] *Wis. Ctr. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

[45] *United States v. Brow*, 62 F.4th 114, 119 (3d Cir. 2023).

[46] *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

[47] *Id.* at 101 (cleaned up).

[48] 8 U.S.C. § 1225(b)(2)(A).

[49] *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citations and internal quotation marks omitted).

9

for hearing." "The titles, headings, and other provisions of § 1225 show that the section applies to noncitizens arriving in the country, not to those who already reside here."[50]

The title and headings of § 1226,[51] however, make clear the section applies to noncitizens already present in the country. It does not mention arriving noncitizens or discuss the border or ports of entry. Courts have interpreted § 1226 to "appl[y] to aliens already present in the United States" and to "create[] a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."[52]

The government's interpretation of § 1225(b)(2) violates the rule against surplusage. "[E]very clause and word of a statute should have meaning," and "no clause, sentence, or word shall be superfluous, void, or insignificant."[53] If "an applicant seeking admission" is the same as "an applicant for admission," then "seeking admission" is surplusage. "'Congress' choice of words is presumed to be deliberate' and deserving of judicial respect[.]"[54] Therefore, this Court must find that "seeking admission" has some additional meaning.

Congress has also recently adopted provisions in § 1226 that would be made superfluous under the government's interpretation. If a noncitizen enters the country illegally and is subsequently convicted or charged with certain crimes, these new provisions require the

---

[50] The title and headings repeatedly refer to 'inspection,' and 'inadmissible arriving aliens,' and 'examin[ations],' which typically "occur at ports of entry, their functional equivalent, or near the border." *Soto*, 2025 WL 2976572, at *6 (citing *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025)).

[51] "Apprehension and detention of aliens." 8 U.S.C. § 1226

[52] *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

[53] *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks omitted).

[54] *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013)).

noncitizen be detained without a bond hearing.[55] Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention. Congress intended these amendments to have "real and substantial effect."[56] Thus, this Court applies § 1226 to noncitizens like Mr. Centeno Ibarra to effectuate Congress's intent.

Past agency practice favors applying § 1226 to noncitizens like Mr. Centeno Ibarra. When statutes are ambiguous, courts can look to "the longstanding practice of the government" which "can inform [a court's] determination of what the law is."[57] Before DHS's change of policy in July 2025, the government's practice was to apply § 1226(a) to inadmissible non-citizens who were already residing in the country. DHS has maintained this practice since § 1225(b)(2) first took effect in 1997.[58] The longstanding practice of using § 1226 to detain noncitizens who are present within the United States favors Mr. Centeno Ibarra's interpretation of the INA.

Congress's passage of recent amendments to § 1226 also serves as an endorsement of this longstanding past interpretation of § 1225(b)(2). "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive

---

[55] 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii) (requiring a noncitizen who is deportable because of an aggravated felony be detained); Laken Riley Act, Pub. L. No. 119-1 § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary).

[56] *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258-259 (2004)).

[57] *Loper Bright*, 603 U.S. at 386 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).

[58] Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208 §§ 302, 309, 110 Stat. 3009-546, 3009-579, 3009-625; *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

evidence that the interpretation is the one intended by Congress.'"[59] Additionally, "[w]hen Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' the Court generally presumes the new provision works in harmony with what came before."[60] In 2025, Congress revisited the detention provisions of the INA, including both § 1225 and § 1226.[61] Instead of rejecting the government's longstanding practice, it added a narrow category of noncitizens to be subjected to mandatory detention under § 1226. As such, the Court will continue with the longstanding interpretation that § 1225 covers noncitizens who are arriving or just arrived in the United States and does not apply to Mr. Centeno Ibarra.

Finally, the canon of constitutional avoidance counsels against the government's interpretation. The canon holds "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail."[62] This canon applies "whether or not [the] constitutional problems pertain to the particular litigant before the Court" and rests "on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."[63]

Mandatory detention of Mr. Centeno Ibarra without a bond hearing under § 1225 raises serious constitutional due process problems. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful,

---

[59] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (citing *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 274-75 (1974) (footnotes omitted)).

[60] *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 713 (2025) (quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981)).

[61] Laken Riley Act §§ 2, 3 (amending § 1225(b) to include a right of action against the DHS Secretary for violation of the statute's detention and removal requirements).

[62] *Clark v. Martinez*, 543 U.S. 371, 380-81 (2013).

[63] *Id.* at 380-81 (emphasis omitted).

temporary, or permanent."[64] Courts have been skeptical of lengthy civil detention without particularized rationale or determination.[65] The Third Circuit has found due process violations from lengthy mandatory detention without a bond hearing under § 1226(c). [66] Even when a statute may permit mandatory detention without a hearing, due process requires a bond hearing if the length of detention becomes so prolonged as to threaten constitutional rights. Mandatory detention under § 1225 does not have a bond hearing requirement at any point of time. If the government is permitted to detain Mr. Centeno Ibarra under § 1225, he faces a risk of prolonged detention in violation of due process. Despite affirmatively applying for asylum in 2023, Mr. Centeno Ibarra still does not have a scheduled asylum hearing. He faces the threat of prolonged detention until the uncertain date of his asylum hearing. Many other similar noncitizens will also be subjected to potentially unconstitutionally prolonged detention if the Court adopts this interpretation.[67]

   The government's argument that the Supreme Court has already found mandatory detention under § 1225 constitutional fails.[68] The canon of constitutional avoidance favors the

---

[64] *Zadvydas*, 533 U.S. at 693.

[65] *Id.* at 690.

[66] *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020).

[67] These due process concerns intensify with another absurd impact of the Government's interpretation on immigration enforcement. Current BIA precedent holds a grant of asylum does not constitute an admission as defined by the INA. *Matter of V-X-*, 26 I. & N. Dec. 147, 150-52 (BIA 2013). As noted by my colleague Judge Sanchez, even if Mr. Centeno Ibarra succeeds on his asylum claim and becomes lawfully present within the United States, under the Government's interpretation, he could nevertheless be mandatorily detained without bond in the future if removal proceedings are reinitiated. The government's interpretation of § 1225 could also subject many other successful asylees who are lawfully in the United States to mandatory detention without bond, raising more due process concerns.

The government argues that standard due process does not apply to mandatory detention under the INA, citing to *Demore v. Kim,* 538 U.S. 510 (2003); Gov't Response at 20-22 [Doc. No. 12]. But *Demore* dealt with ensuring deportable noncitizens who had committed a qualifying criminal offense were detamed, and criminality is not a factor that is present in this case. *Id.* at 527-29; *see* 8 U.S.C. § 1226(c).

[68] The government claims the Court did such in *Jennings v. Rodriguez,* 583 U.S. 281 (2018); Gov't Response at 14-15 [Doc. No. 12]. The Supreme Court in *Jennings* only addressed whether an implicit limit on the length of mandatory detention existed in the language of the statute based on the canon of constitutional avoidance. *Id.* at 287.

statutory interpretation which applies § 1226 detention to noncitizens like Mr. Centeno Ibarra because it avoids the potential constitutional due process concerns that the government's interpretation would raise.

After considering the text and structure of the INA, longstanding agency practice, Congress's actions, and the canon of constitutional avoidance, the Court finds § 1226 applies to noncitizens like Mr. Centeno Ibarra who have been residing in the country, and § 1225 is reserved for newly arriving noncitizens. Mr. Centeno Ibarra has been unlawfully detained under § 1225(b)(2), and his continued mandatory detention violates due process. Because a bond hearing is unnecessary, this Court will order his immediate release.[69]

## IV.  CONCLUSION

Accordingly, the Court will grant Petitioner Elder Ismael Centeno Ibarra's for Writ of Habeas Corpus in full.

An order will be entered.

---

It explicitly declined to comment on whether § 1225 mandatory detention without bond is constitutional. *Id.* at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as a court of review, not of first view, we do not reach those arguments." (cleaned up)).

[69] The Government has offered no rationale to refuse bond to Mr. Centeno Ibarra. In a "bond hearing, the Government bears the burden of persuasion by clear and convincing evidence" to support a "finding that continued detention is needed to prevent [the noncitizen] from fleeing or harming the community." *German Santos*, 965 F.3d at 214 (citation omitted). It is clear Mr. Centeno Ibarra is not likely to flee or harm the community. A bond hearing would certainly result in Mr. Centeno Ibarra's release and only serve to delay relief.